BROOKE MACKALL, JR., vs. ALFRED RICHARDS ET AL.

EQUITY. No. 8118.

} Decided July 5, 1884.
} The CHIEF JUSTICE and Justices HAGNER and Cox sitting.

1. An execution sale will be set aside where the description of the property, both in the advertisement and in the marshal's deed, is so vague and uncertain that it is impossible to ascertain what property was sold and conveyed.

2. The rule on the subject of boundaries is, that if a deed calls for a line to run to a fixed boundary or a fixed line, the description of the distance, inconsistent with that call, must yield to the call.

3. It *seems* that where the description in the marshal's deed is a departure from the description in the advertisement of sale, the deed is void.

THE CASE is stated in the opinion.

W. WILLOUGHBY for plaintiff.

WM. B. WEBB for defendant.

Mr. Justice Cox delivered the opinion of the court.

This was a bill filed to set aside a sale made by the marshal of the United States, in virtue of executions issued against the complainant, upon several judgments. The marshal undertook to sell a part of lot 7 in square 223, situated at the northeast corner of that square, at the intersection of New York avenue and Fourteenth street.

The bill claimed that all the proceedings were irregular and that the sale was absolutely void. If the complainant had had the legal title vested in him at that time of course the remedy would have been at common law. He could have instituted an ejectment, and would have had no ground for coming into a court of equity.

It happened, however, that Brooke Mackall, sr., the father, had previously conveyed the legal title to this property to his son, Leonard Mackall, in trust for such person as he should thereafter designate, and shortly before his death he made a deed conveying his equitable interest in the property to Brooke Mackall, jr., and directed the trustee to convey it to him. But Leonard Mackall refused to do so. Therefore the complainant was in a position where he could not in-

stitute a suit at law himself or compel the trustee to do so, and was compelled to come into a court of equity to get relief from what was said to be a void sale.

The bill was dismissed below. On appeal here, when it came on for argument, the court's attention was called to the fact that there was also pending in this court another suit between Brooke Mackall, jr., as defendant, and the other heirs of Brooke Mackall, sr., in which the title to this very property was litigated, as between them. And it was suggested that even if the court should find that Brooke Mackall, jr., was entitled to the relief claimed as against Richards, it might afterwards turn out, in the other case, that he was not the right party to have the relief; that the parties really entitled in equity to the property were the other heirs of Brooke Mackall, sr. Therefore it was suggested that either they ought to be made parties to this suit, or the determination of this case should be deferred until the other case should be decided, and this latter view was acquiesced in by the court.

The case was, therefore, taken under advisement, until the determination of the case between the co-heirs. Lately, the other case has been argued before this court, composed at that time of the Chief Justice and Justices Wylie and James, and they have virtually decided that the complainant in this suit, that is, Brooke Mackall, jr., was, as against his co-heirs, entitled to this property. That, therefore, removes a difficulty in the way of disposing of the present case.

The present case, Brooke Mackall, jr., *vs.* Alfred Richards and Leonard Mackall, was heard by the Chief Justice, Justice Hagner and myself. The bill attacks the sale made by the marshal, on various grounds. For example, it is claimed that some of the proceedings on which judgments were obtained, and executions issued, were proceedings in the way of enforcing a mechanic's lien, and were conducted at common law and not in equity, as the law required. In some of them, there was a mere personal judgment against Brooke Mackall, and yet the execution was issued against

specific property, describing it. Then, again, it was said that the executions were issued to one marshal, and sale was made by another marshal under the same writ, without having it returned and a *venditione exponas* issued, &c. Then, again, that the description in the marshal's advertisement and his deed were so vague that it was impossible to ascertain what property was sold or conveyed.

We have considered these various objections, and without disposing of any of the others, we have come to the conclusion that the sale cannot be sustained, on account of the patent and palpable ambiguity and uncertainty in the description of the property, both in the advertisement and in the marshal's deed.

The marshal advertised it by the following description: "Beginning at the N. E. corner of the square; then running S. 44 feet; thence W. to the *west end* of the lot; thence on the west line of the lot northward to the north line, and thence to the beginning."

There is nothing incongruous on the face of this description, but when we come to apply it, we find it to be a mis-description. For instance, the line running west from the end of the 44 feet, measured south, on Fourteenth street—interpreting that to mean *due west*—instead of reaching the west end, intersects the north line at a remote point from the west end, making a little triangular space which was never in contemplation by the parties. The rule on the subject of boundaries is, that if a deed calls for a line to run to a fixed boundary or a fixed line, the description of the distance, inconsistent with that call, must yield to the call. And, therefore, it is true that the word "west" must be rejected from this description entirely because it was inconsistent with the call "to the west end of the lot." But if we reject the word "west," then we have a patent ambiguity which is unsusceptible of any explanation at all. It will then read, "beginning at the N. E. corner of the square; then running S. 44 feet; thence westerly to the west end of the lot, and thence northwardly to the north line," &c. Where is it to strike the west line? The course is not given at all.

35

It may strike it within one, ten, or fifty feet of the north line. It is left perfectly ambiguous. It is impossible to locate a lot thus described.

If this description were contained in a deed from a grantor to a grantee, the first thing for the grantee to do would be to file a bill to have the deed reformed so as to conform to some previous contract between the parties. But here is a judicial sale made by a public officer who has not a contract with the vendee at all, except what is contained in the public advertisement or deed. These convey and describe something or nothing, and the something is made so uncertain that it amounts to nothing. It is impossible to say, and no jury could ascertain, what lot was intended by this deed. It is not the function of parol evidence to correct this error. Parol evidence may be received, not to show what the parties intended to say in addition to or differently from what was expressed, but to show what the language expressed really meant. It may introduce light on that question from surrounding circumstances.

But there is nothing by which this deed could be corrected. It is absolutely void upon its face. Both the advertisement and the deed are ambiguous. The deed purports to be a little more definite than the advertisement. Instead of running the line *due west*, it says *westwardly.* But *westwardly* would embrace any line between west and north. So that it is not made any more certain, and if it were, it is a departure from the advertisement and would not be justified by it.

There are equitable considerations also in favor of sustaining the legal objection. It is obvious that this subdivision of the lot by the marshal was an utter descruction of the property. The most valuable frontage of this ground is on New York avenue. The marshal undertook to take a slice from the whole front on the north, making the piece front on the side of the lot, which was fatal to the market value of the property, and would necessarily cause the sale to be made at a great sacrifice.

Of course, however, as the complainant comes into a court

of equity, he must do equity, and inasmuch as it is known that Richards bought in good faith, and paid his money for it, laid out money in improvements, &c., all that must be made good to him.

The decree of the court, then, is, that the decree below is to be reversed, the sale set aside, and the case referred to the auditor to state an account between Richards and the property, in which Richards shall be credited with the amount of his debt and the encumbrances taken up by him, the taxes paid by him, the improvements made by him, with interest, and be charged with the rents and income derived from the property, and the balance ascertained. Then the complainant will have the right to pay Richards, or the property may be sold for the balance due. That account can be stated under the direction of the Special Term.